### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLORADO

Civil Action No. 15-cv-00571-NYW

VICKI MICHELLE THOMAS,

        Plaintiff,

v.

CAROLYN W.  COLVIN, Acting Commissioner of Social Security,

        Defendant.

---

### MEMORANDUM OPINION AND ORDER

---

Magistrate Judge Nina Y. Wang

      This action comes before the court pursuant to Title XVI of the Social Security Act ("Act") and 42 U.S.C. §§ 1381-83(c)  for review of the Commissioner of Social Security's final decision denying Vicki Michelle Thomas's ("Plaintiff" or "Ms. Thomas") application for Supplemental Security Income ("SSI").  The Order of Reference dated December 21, 2015 referred this civil action to the undersigned Magistrate Judge "for all purposes" pursuant to Title 28 U.S.C. § 636(c).  *See* [#20].[1]  The court has carefully considered the Complaint (filed March 20, 2015) [#1], Defendant's Answer (filed September 4, 2015) [#10], Plaintiff's Opening Brief (filed November 4, 2015) [#15], Defendant's Response Brief (filed December 2, 2015) [#16], Plaintiff's Reply Brief (filed December 21, 2015) [#19], the entire case file, the administrative

---

[1] For consistency and ease of reference, this Order utilizes the docket number assigned by the Electronic Court Filing ("ECF") system for its citations to the court file.  For the Administrative Record, the court then refers to the page number associated with the Record, which is found in the bottom right-hand corner of the page.  For documents outside of the Administrative Record, the court refers to the page number assigned in the top header by the ECF system.  Where the court refers to the filings made in the ECF system in this action, it uses the convention [#___].

record, and applicable case law.   For the following reasons, I AFFIRM the Commissioner's decision.

## PROCEDURAL HISTORY

On January 26, 2012, Ms. Thomas filed an application for SSI under Title XVI of the Act. [#11-5 at 235].  She has an eleventh grade education, [#11-6 at 260], and has not completed a GED. [#11-2 at 161].  Ms. Thomas worked in home healthcare from 1990 to 2007. [#11-6 at 273].  She alleges that she became disabled on July 17, 2007 at age 40. [#11-2 at 141].  Her claim was denied at the initial determination stage on June 19, 2012. [#11-3 at 181].  Ms. Thomas requested a hearing on June 26, 2012. [#11-4 at 188].

Administrative Law Judge Lowell Fortune ("ALJ") held a hearing on June 7, 2013 at which Plaintiff was represented by counsel and testified that she could not work due to debilitating back, neck, and leg pain, which prevent her from sitting for longer than eleven consecutive minutes, walking farther than one block, and lifting more than twenty pounds. *See* [#11-2 at 146-51].  Ms. Thomas further attested that she suffers from depression, leading to uncontrolled outbursts of crying and unprovoked anger. [*Id.* at 155].  Additionally, she stated that she takes gabapentin, fentanyl, and Percocet to manage her pain; takes Prozac for depression; and uses approximately one joint of marijuana every two weeks to help her sleep. *See* [*id.* at 157-59].

Next, Ashley Byers, a vocational expert ("VE"), testified at the hearing. [*Id.* at 161]. The ALJ posed a hypothetical scenario to the VE, asking whether jobs exist for a person with the following limitations:

- a person of Plaintiff's age, education, and work experience;

- who can lift no more than ten pounds frequently;

- who can stand or walk four hours out of an eight-hour day;

- who can sit over six hours in an eight-hour day;

- who cannot use ladders, scaffolds, or ropes to scale to any heights;

- who cannot work above specific vocational preparation ("SVP")[2] level three;

- who can have unlimited incidental contact with the public;

- who cannot work in coordination with others, as on an assembly line; and

- who cannot perform work involving sustained concentration.

*See* [*id.* at 162]. The VE testified that an individual with such limitations could perform light work, and although this person could not perform Plaintiff's previous work, jobs compatible with these limitations, such as a merchandise marker, collator operator, and domestic laundry worker, exist in significant numbers in the national economy. *See* [*id.*].

The ALJ posed a second hypothetical in which he kept all of the above requirements, but added the condition that the worker could only stand for two hours in an eight-hour day. [*Id.*]. The VE stated that such a worker could find gainful employment in sedentary positions like microfilm document preparer, address clerk, or tube clerk. *See* [*id.* at 162-63].

On cross-examination, Plaintiff's attorney interposed three more hypotheticals:

(1) He added to the ALJ's second hypothetical the requirement that an individual be capable only of brief superficial contact with coworkers, supervisors, and the general public.

---

[2] SVP refers to the "time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Vigil v. Colvin*, 805 F.3d 1199, 1201 n.2 (10th Cir. 2015) (citing Dictionary of Occupational Titles, App. C, Sec. II (4th ed., revised 1991); 1991 WL 688702 (G.P.O.). The higher the SVP level, the longer time is needed to acquire the skills necessary to perform the job. Jeffrey S. Wolfe and Lisa B. Proszek, SOCIAL SECURITY DISABILITY AND THE LEGAL PROFESSION 163 (Fig. 10-8) (2003). SVP level 3 is associated with semi-skilled work. https://www.ssa.gov/OP_Home/rulings/di/02/SSR2000-04-di-02.html.

According to the VE, all of the aforementioned positions are nonetheless suitable for someone who fit that description. [*Id.* at 165].

(2) He included an additional limitation that the individual be unable to maintain concentration for two-hour intervals. The VE testified that such a requirement would eliminate that individual from finding competitive work. [*Id.*].

(3) He asked whether work exists for someone who had to change positions between sitting, standing, and walking every fifteen minutes. The VE stated that this limitation would eliminate all sedentary work. [*Id.*]

After reviewing the record and hearing the above testimony, the ALJ issued his written decision on August 20, 2013, concluding that Ms. Thomas can perform light work and is not disabled. [#11-2 at 113]. Plaintiff requested a review of the ALJ's assessment, which was denied on January 20, 2015. [*Id.* at 1]. The ALJ's order then became the final decision of the Commissioner. 20 C.F.R. § 404.981; *Nelson v. Sullivan*, 992 F.2d 1118, 1119 (10th Cir. 1993) (citation omitted). Plaintiff filed this action on March 20, 2015. [#1]. This court has jurisdiction to review the Commissioner's final decision. 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

In reviewing the Commissioner's final decision, the court is limited to determining whether the order adheres to applicable legal standards and is supported by substantial evidence in the record as a whole. *Berna v. Chater*, 101 F.3d 631, 632 (10th Cir. 1996); *Angel v. Barnhart*, 329 F.3d 1208, 1209 (10th Cir. 2003). If the ALJ did not "apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993) (internal citation omitted).

If the court finds that the ALJ made his decision based on substantial evidence, the ALJ's ruling will be upheld even if he could have reached a different result based on the record. *See Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990). Conversely, if the court finds that the ALJ did not rely on substantial evidence, the ALJ's ruling will be reversed. *See Allen v. Barnhardt*, 357 F.3d 1140, 1145 (10th Cir. 2004). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). Moreover, "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (internal citation omitted). The court will not "reweigh the evidence or retry the case," but must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty*, 515 F.3d at 1070 (internal citation omitted).

## THE ALJ'S DECISION

An individual is entitled to receive SSI if he or she is financially eligible, files an appropriate application, and is disabled as defined in the Act. 42 U.S.C. § 1382. The applicant "must have a medically determinable physical or mental impairment(s) of such severity that he or she is not only unable to do his or her previous work but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." SSR 82-62, 1982 WL 31386 (Jan. 1, 1982).

The Commissioner has developed a five-step evaluation process for determining whether a claimant is disabled under the Act. *See Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing the five steps in detail). "If a determination can be made at any of the steps

that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750. "The claimant bears the burden of proof through step four of the analysis," but the burden shifts to the Commissioner at step five. *Nielson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993).

At step one, the ALJ determines whether a claimant is participating in substantial gainful activity. Evaluation of Disability of Adults, 20 C.F.R. § 416.920(a)(4)(i) (2012). If the claimant is not engaging in substantial gainful employment, he or she may be disabled, and the ALJ moves on to the second step of the inquiry. If a claimant is working, he or she is not disabled, and the analysis ends. 20 C.F.R. § 416.920(b).

The second step requires the ALJ to evaluate the medical severity of the claimant's impairments. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant has a sufficiently severe impairment or combination of impairments that "significantly limits [his or her] physical or mental ability to do basic work activities," the ALJ will continue with the third step of the review. 20 C.F.R. § 416.920(c). If the impairment or combination of impairments is not severe, the claimant is not disabled, and the examination stops. *Id.*

At the third step, the ALJ must decide whether the medical severity of the claimant's impairment or combination of impairments meets the criteria listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (§§ 416.920(a)(4)(iii), 416.920(d); Listing of Impairments, 20 C.F.R. § 416.925). This appendix lists possible impairments that would be "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). If the claimant's impairment appears on the list, he or she will be deemed disabled, and the inquiry will stop. 20 C.F.R. § 416.920(d). If the impairment is not on the list in the appendix, the examination continues. 20 C.F.R. § 416.920(a)(4)(iii).

Before continuing to step four, the ALJ will determine the claimant's residual functioning capacity (RFC). 20 C.F.R. § 416.920(e). The RFC is what a claimant is still "functionally capable of doing on a regular and continuing basis, despite his impairments: the claimant's maximum sustained work capability." *Williams*, 844 F.2d at 751. The ALJ assigns an RFC category—sedentary, light, medium, heavy, and very heavy—based on the claimant's physical limitations and a job's exertional requirements. Physical Exertion Requirements, 20 C.F.R. § 416.967. A job in the category of light work

> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds[,] . . . requires a good deal of walking or standing[,] . . . [and] involves sitting most of the time with some pushing and pulling of arm or leg controls. If someone can do light work, [the ALJ has] determine[d] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 416.967(b).

The fourth step requires the ALJ to compare this RFC assessment with the "physical and mental demands of [the claimant's] past relevant work." *Id.* After such comparison the ALJ decides whether the claimant can still do his or her prior job. *Id.* If the claimant can continue performing previous work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is prevented from doing his or her past job, the ALJ moves to step five of the analysis. 20 C.F.R. § 416.920(f).

At the fifth step, the ALJ considers the RFC assessment along with the claimant's age, education, and work experience to determine if the claimant can adjust to another job in the national workforce. 20 C.F.R. § 416.920(a)(4)(v). At this point,

> [i]f a conclusion of "not disabled" results, this means that a significant number of jobs exist in the national economy for which the claimant is still exertionally capable of performing. However, . . . [t]he decision maker must then consider all relevant facts to determine whether

claimant's work capability is further diminished in terms of jobs contraindicated by nonexertional limitations.

. . .

Nonexertional limitations may include or stem from . . . mental impairments, such as the inability to understand, to carry out and remember instructions, and to respond appropriately in a work setting; postural and manipulative disabilities; psychiatric disorders; chronic alcoholism; drug dependence; dizziness; and pain. . . .

*Williams*, 844 F.2d at 751-52.  If the ALJ determines no jobs exist in the national economy for someone in the claimant's condition, the claimant is deemed disabled.  20 C.F.R. § 416.920(g).  Conversely, if the ALJ finds the claimant can adapt to an existing job in the workforce, the claimant is judged not disabled.  *Id.*

In this case, the ALJ determined that Ms. Thomas had not engaged in substantial gainful activity since January 26, 2012.  Moving on to step two, the ALJ found that Ms. Thomas suffered from the severe impairments of lumbar spine disorder, depressive disorder, and an anxiety disorder.  The ALJ determined these ailments resulted in mild restriction in activities of daily living, mild to moderate difficulties in social functioning, and moderate difficulties in concentration, persistence, and pace.  In the third step, comparing Ms. Thomas's impairments to the list in 20 C.F.R. Part 404, Subpart P, Appendix 1 (§§ 416.920(a)(4)(iii); 416.920(d); 416.925), the ALJ established that her ailments were not within those listed in the statute.  *See* [#11-2 at 115-24].

At the fourth step, the ALJ determined that Ms. Thomas had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b) and cannot perform her past work as a home health care aide.  Specifically, he found that Ms. Thomas could lift 20 pounds occasionally and 10 pounds frequently; could stand or walk for four hours in an eight-hour day; could sit for at least six hours in an eight-hour day; could not perform assembly-line work or work requiring her to

8

scale ladders, scaffolds, or ropes; could not engage in work requiring sustained concentration; cannot perform work above the SVP 3 level; and should not interact with the public for more than two-thirds of a workday, but may have unlimited incidental contact with the public. Last, after considering her impairments, age, previous experience, and education level, the ALJ found that jobs exist in significant numbers for Ms. Thomas in the national economy; therefore, the ALJ concluded that Ms. Thomas is not disabled. *See* [*id.*].

Ms. Thomas objects to the ALJ's decision on three grounds: (1) the ALJ failed to support his determinations of Plaintiff's credibility with substantial evidence in the record; (2) the ALJ's RFC finding lacks substantial evidence in the record; and (3) in his RFC determination, the ALJ failed to consider Plaintiff's reports of pain. *See* [#15 at 5]. The court considers each of these objections in turn.

## ANALYSIS

### I. The ALJ's Assessment of Plaintiff's Credibility

It is well known that "[c]redibility determinations are peculiarly the province of the finder of fact, and [should not be upset] when supported by substantial evidence." *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Diaz v. Sec'y of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990)). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen*, 838 F.2d 1125, 1133 (10th Cir. 1988). Plaintiff objects to the ALJ's credibility determinations, asserting they lack substantial evidence. Plaintiff argues, *see* [#15 at 21], that the ALJ should have expressly analyzed this case using the following factors:

> [1] the levels of medication and their effectiveness, [2] the extensiveness of the attempts (medical or nonmedical) to obtain relief, [3] the frequency of medical contacts, [4] the nature of daily activities, [5] *subjective measures of credibility that are peculiarly within the judgment of the ALJ,*

9

[6] the motivation of and relationship between the claimant and other witnesses, and [7] the consistency or compatibility of nonmedical testimony with objective evidence.

*Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (quoting *Huston*, 838 F.2d at 1132) (emphasis and numbers added). However, these are "possible factors" for consideration, *Huston*, 838 F.2d at 1132, and are "not exhaustive." *Id.* at n.7. Additionally, "so long as the ALJ sets forth the specific evidence he relies on in evaluating the claimant's credibility," he is "not require[d to produce] a formalistic factor-by-factor recitation of the evidence." *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff takes issue with the subjective measures of credibility that are peculiarly within the judgment of the ALJ. The ALJ listed four measures of credibility, concluding "I have described the different credibility factors I found to be applicable to the claimant. I did not consider any one factor to be controlling. Instead I have considered the cumulative effect of all such factors." [#11-2 at 120]. This court's review finds that each measure is supported by substantial evidence in the record, and therefore, there is no justification to disturb the ALJ's subjective determination of Plaintiff's credibility.

### A.    ALJ's First Measure of Credibility

First, the ALJ identified "one factor affecting the credibility of a witness[:] whether a person's conduct is consistent with the person's assertions." [*Id.* at 118]. Plaintiff alleges that she could not do any work and argues, *see* [#15 at 20], "sporadic performance [of household tasks or work] does not establish that a person is capable of engaging in substantial gainful activity." *Thompson*, 987 F.2d at 1490 (internal quotation omitted). The ALJ found Plaintiff's conduct to be inconsistent with her assertions of being unable to do any work, sit for an extended period of time, and interact with people, concluding that Plaintiff can not only do work, as

described above, but can also take care of her finances and get to and from work, as she can pay her bills and navigate the bus system to run simple errands.[3]   The ALJ concluded that the Plaintiff was capable of doing more than what was deemed "sporadic" in *Thompson*, and cited evidence to support his determination.   Therefore, this discrepancy was proper evidence to consider while determining Plaintiff's credibility.

Similarly, Plaintiff claims that she cannot sit for longer than nine to eleven minutes without having to change positions, but the ALJ observed that she sat for close to 45 minutes at a stretch during the hearing.   The record reflects that Plaintiff asked to stand up before the completion of the hearing, but had already sat through approximately 80% of the hearing by that time.   *See* [#11-2 at 159].   "Although an ALJ may not rely solely on his personal observations to discredit a plaintiff's allegations, he may consider his personal observations in his overall evaluation of the claimant's credibility."   *Qualls,* 206 F.3d at 1373.

Additionally, Plaintiff asserts that she cannot interact with people.   In his decision, however, the ALJ noted Plaintiff reports that she talks once a week to her boyfriend.   [#11-2 at 117].   Plaintiff also reported that socially, she was able to interact with the psychological consultative examiner and reported getting along with family members and being emotionally involved wither boyfriend.   [*Id.* at 123].   The ALJ also pointed to her comfortable interaction with a member of the Cooperative Disability Investigation Unit (CDIU), making small talk, laughing, and smiling while riding the elevator up to a doctor's appointment.   *See* [#11-7 at 358]. Minutes later, a physician observed Plaintiff appeared "restless, anxious, stiff and tense" and "depressed, sad and tearful," [*id.* at 349], and found Plaintiff "would appear to have a moderate-

---

[3] The ALJ also noted that Plaintiff can cook and clean for herself.   The court finds no evidence that this is so.   Still, there is ample evidence in the record to support his conclusion that she lacks credibility and further evidence that she is still capable of engaging in substantial gainful activity.

to-marked impairment in her social functioning," [*id.* at 350]. However, the physician did not know about Plaintiff's behavior immediately before entering his office. Plaintiff argues that the ALJ should not have weighed the interaction more heavily than the doctor's opinion that Plaintiff has potentially disabling anxiety and depression.[4] [#15 at 21]. While the Secretary must give weight to physicians' opinions, *Hargis*, 945 F.2d at 1489-90, the court must "defer to the ALJ as trier of fact, the individual optimally positioned to observe and assess witness credibility." *Casias v. Sec'y of Health & Human Servs*, 933 F.2d 799, 801 (10th Cir. 1991). As discussed below, the ALJ found that this doctor did not have all necessary information to make his determination. The interactions in the elevator are proper evidence to support the ALJ's determination that Plaintiff was not credible, and the court finds no error by the ALJ on this point.

###### B.    ALJ's Second Measure of Credibility

The ALJ identified "whether [Plaintiff's] evidence is inconsistent with or contradicted by other evidence in the record" as the second factor used to determine Plaintiff's credibility. [#11-2 at 119]. The ALJ pointed to the discrepancy between Plaintiff's testimony in this case and evidence in the record regarding her use of marijuana as evidence that she lacked credibility. At the hearing, Plaintiff reported that she used marijuana on average once every two weeks for three years. However, less than two years earlier, she reported that she "smokes weed (marijuana) all day." [#11-8 at 387]. Plaintiff argues that she could have used marijuana all day at the time of the report and still maintained an average marijuana consumption of one joint every two weeks. [#15 at 21]. However, several other medical records indicate Plaintiff consistently smoked marijuana beyond the self-report of once every two weeks. *See* [#11-8 at 382 (advising Plaintiff

---

[4] Importantly, as described below, the ALJ did not disregard this physician's opinion; rather, the opinion was incorporated into the ALJ's ultimate RFC determination.

to stop smoking marijuana); *id.* at 384 ("smokes a lot of cigarettes and marijuana"); *id.* at 396 (showing recent marijuana use); *id.* at 404 ("smokes marijuana BID"[5])].  Therefore, the court finds the ALJ's conclusion regarding this discrepancy is supported by substantial evidence.

### C.      ALJ's Third Measure of Credibility

The third factor that the ALJ used to evaluate Plaintiff's credibility was "whether [Plaintiff's] evidence has either exaggerated the facts or has magnified the claimant's symptoms."  [#11-2 at 119].  The ALJ found that Plaintiff understated the amount of weight she can lift.  For instance, despite claiming on her application for disability that she can no longer lift anything, s*ee* [#11-6 at 286], Plaintiff testified that she could lift a twenty-pound bag of potatoes. *See* [#11-2 at 149].  Plaintiff argues that "perfect consistency" is not required, [#19 at 7], but the ALJ may nonetheless use these inconsistencies to support his determination that Plaintiff is not credible. *Broadbent v. Harris*, 698 F.2d 407, 413 (10th Cir. 1988) ("Exaggerating symptoms or falsifying information for purposes of obtaining government benefits is not a matter taken lightly by this Court.  As a safeguard against such schemes, the determination of credibility is left to the observations made by the [ALJ] as the trier of fact.").

### D.      ALJ's Fourth Measure of Credibility

Fourth, the ALJ looked at Plaintiff's conduct and evaluated "whether it has been consistent over time or whether it has been variable and inconsistent."  [#11-2 at 119].  Here, the ALJ pointed to inconsistencies in the way Plaintiff walked in the process of entering two separate doctors' offices; additional differences in the way Plaintiff walked before, during, and after a single doctor's appointment; and the discrepancies in her affect before and during an appointment with a mental health provider.

---

[5] "BID" refers to "*bis in die,*" which in Latin means twice a day.  *See, e.g.*, *McNeely v. Astrue*, No. 11-3134, 2012 WL 6642743, at *3 (W.D. Ark. Dec. 20, 2012) (explaining the BID notation in medical documents).

The ALJ cited a CDIU report that highlighted differences between Plaintiff's allegations of disability and actual behavior.  CDIU investigators observed differences in Plaintiff's gait when visiting one doctor (where she walked slowly, upright, and with assistance) and when visiting another doctor three days later (where she walked more quickly, hunched over, and independently).  *See* [#11-7 at 358].  Additionally, the same report identified differences in Plaintiff's manner of walking before, during, and after the same appointment with Dr. Moran. Before this appointment, Plaintiff walked slowly and with assistance, but otherwise normally. [*Id.*].  At the appointment, she walked with a limp and bent over at the waist.  [*Id.* at 345].  After the appointment, although she required assistance walking and getting into her car in the doctor's office parking lot, CDIU officers followed her car to a private home and witnessed her walking and entering the car without assistance.  *See* [*id.* at 358].

The ALJ also noted the difference in Plaintiff's affect before and during an appointment with the evaluating psychiatrist to determine her eligibility for Social Security benefits.  As discussed above, on the way to the appointment, Plaintiff interacted with a CDIU officer in the elevator in a friendly way, making jokes and smiling.  [*Id.* at 358-59].  Minutes later, she "interacted with the examiner in a distant, guarded, depressed, and tearful fashion."  [*Id.* at 350]. Plaintiff claims that these differences do not preclude an actual disability.  [#15 at 19].  However, it is within the ALJ's discretion to determine credibility so long as his findings are rooted in substantial evidence.  *Kepler*, 68 F.3d at 391.  The court finds that the ALJ did not err in his determination of Plaintiff's credibility, and his conclusion is supported by substantial evidence.

## II.    The ALJ's Determination of Plaintiff's RFC

The court next considers whether the ALJ erred when determining Plaintiff's RFC. Plaintiff raises four objections regarding the ALJ's determination that Plaintiff retained the RFC

to perform light work.  First, she claims the ALJ improperly relied on the treating physician's opinion over the recommendations of the examining physicians.  Second, Plaintiff asserts the ALJ entirely disregarded the examining physicians' findings.  Third, Plaintiff argues that by giving her medical opinion, the treating physician was overstepping into the role of the Commissioner.  Fourth, she argues the ALJ improperly failed to consider her inability to comply with treatment as prescribed by her previous physicians.  This court respectfully disagrees with all four assertions.

### A.    Weighing of Physicians' Opinions

Plaintiff objects to the ALJ's RFC determination, claiming the ALJ improperly ignored the opinions of both examining physicians who were asked to determine her eligibility for Social Security, in favor of the opinion of her treating physician.  [#15 at 23].  The court respectfully disagrees.

"According to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources," *Langley v. Barnhart*, 474 F.3d 1116, 1119 (10th Cir. 2004), "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)," Evaluating Opinion Evidence, 20 C.F.R. §§ 416.927(c)(1) and 416.927(c)(2).  Moreover, "when a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports to see if they outweigh the treating physician's report, not the other way around." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004).  To do so, the ALJ applies the following factors:

> The length of the treatment relationship and the frequency of the examination; the nature and extent of the treatment relationship; the

degree to which the physician's opinion is supported by relevant medical evidence; the extent to which the physician's opinion is consistent with the rest of the record; whether the physician is a specialist in the field to which the opinion has been given; [and] other factors brought to the ALJ's attention which tend to support or contradict the opinion.

20 C.F.R. §§ 416.927(2-6); *see also Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007).

Plaintiff's treating physician, Dr. Lara Penny, wrote, "I don't support [Plaintiff's] SSI claim as her condition would improve with [physical therapy]." [#11-8 at 382]. Plaintiff instead relies on the reports of two examining physicians, Dr. Laura Moran, who observed her physical state, and Dr. William Graham, who evaluated her mental state. *See* [#11-7 at 345, 350]. These physicians concluded that Plaintiff had impairments that could lead to a determination of disability. [*Id.*]. The ALJ ruled that, in view of the examining physicians' reports, Plaintiff did indeed have impairments, but they were not severe enough to render her disabled. [#11-2 at 127]. In doing so, the ALJ gave "little weight" to the opinions of both examining physicians and instead gave the treating physician's opinions "the most weight." [*Id.* at 122-23].

After considering the factors set forth above (*see* 20 C.F.R. §§ 416.927(2-6)), the court finds the ALJ did not err when he placed heavier weight on the notes from Plaintiff's treating physician. Dr. Penny treated Plaintiff on eighteen separate occasions over six years, for complaints ranging from back and leg pain to foot calluses. *See* [#11-8 at 369, 371, 375-76, 380-82, 387, 402, 404-05, 409, 416-418, 421, 430-31]. Through these interactions, Dr. Penny gained detailed knowledge of Plaintiff's life, relationships, and medical history. *See* [*id.*]. The ALJ's conclusions are consistent with Dr. Penny's assessment that Plaintiff's ailments would improve with physical therapy:

In July of 2010, the claimant had an EMG study which was negative, indicating that her back pain is muscular in nature. The record is fairly absent of examination findings which offer much probative valuable information as to her residual functional capacity. However, some notes

16

> indicate that she had 5 out of 5 strength in her extremities and nothing more than some tenderness in her back. These benign findings further erode the credibility as to the severity and disabling nature of her symptoms.

[#11-2 at 120].

The ALJ identified a specific and legitimate reason for discounting the examining physicians' opinions: they did not have all the essential information at the time of making their determinations. Dr. Moran stated, "[b]ased on my examination of the claimant, her history, and the *currently available information*, I do not think this claimant could sustain an eight-hour day because of the severity of her back and leg pain, her radiculopathy, and the amount of narcotics and muscle relaxants that she takes." [#11-3 at 170 (emphasis added)]. However, the ALJ concluded that Dr. Moran did not know about the disparity in the way that Plaintiff walked before, during, and after their appointment, discussed above. Additionally, at the time that Dr. Moran made this report, Plaintiff had self-reported radiculopathy, but Dr. Moran's report indicated she had not yet received the results of a confirmatory x-ray, *see* [#11-7 at 345 (stating "an x-ray of claimant's lumbosacral spine pends at the time of this dictation")]—which showed normal results. [*Id.* at 341].

Likewise, the ALJ found that Dr. Graham did not have the necessary information to make his determination that Plaintiff had potentially disabling depression and anxiety. Dr. Graham concluded that Plaintiff presented as "restless, anxious, stiff and tense" and "depressed, sad and tearful." [*Id.* at 349]. Based on these observations, Dr. Graham found Plaintiff "would appear to have a moderate-to-marked impairment in her social functioning." [*Id.* at 350]. However, as discussed above, Plaintiff was joking and laughing with a member of the CDIU immediately before entering Dr. Graham's office. Since the ALJ—unlike Dr. Graham—had access to the entire record, this court concludes that the ALJ had substantial evidence for his determination.

### B.      Incorporation of Examining Physicians' Reports

Contrary to Plaintiff's claims, the ALJ did not entirely disregard the examining physicians' reports; rather he incorporated them in his determination that Plaintiff is capable of doing only light or sedentary work.  Dr. Moran found decreased flexion of both hips, markedly reduced range of motion in both knees, and decreased extension in her lumbar spine.  [#11-7 at 344].  Dr. Graham stated that Plaintiff has moderate or moderate-to-marked impairments in her ability to understand instructions, sustain concentration, and interact with supervisors and coworkers.  [#11-3 at 170].  The ALJ concluded that these impairments indeed exist, but did not render Plaintiff disabled.  Therefore, the court finds the ALJ did not disregard the examining physicians' reports.

### C.      Treating Physician's Medical Opinion

Plaintiff also argues that, by opining she "[did]n't support [Plaintiff's] SSI claim," Dr. Penny was overstepping into the role of the Commissioner. *See* [#11-8 at 382].  Contrary to Plaintiff's argument, Dr. Penny merely gave her medical opinion that Plaintiff's condition could improve with physical therapy and did not purport to make a final determination.  Even if Dr. Penny had offered such an opinion, a treating physician's "opinion that a claimant is totally disabled . . . is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the Secretary."  *Castellano v. Sec'y of Health and Human Servs*, 26 F.3d 1027, 1029 (10th Cir. 2004).  Therefore, the court does not find that the ALJ erred in considering Dr. Penny's opinion and there is nothing in the record to suggest that the ALJ improperly substituted his independent judgment derived from the weighing the information with Dr. Penny's opinion.

### D. Plaintiff's Failure to Follow Prescribed Treatment

Plaintiff contends that the ALJ erred in relying upon the treating physician's assessment that she failed to comply with the prescribed treatment of physical therapy, not upon any assessment of actual functional limitations (or lack thereof), was in error. [#15 at 23]. Ms. Thomas argues that if the ALJ based his determination that she was not disabled on the basis that she did not comply with prescribed treatment, the ALJ was required to make specific findings of fact in accordance with 20 C.F.R. § 416.930. [*Id.* at 20]. Plaintiff claims that she was excused from compliance, because her inability "to pay the copayment that physical therapy treatment required . . . can be an acceptable reason for a failure to comply with prescribed treatment." [*Id.* at 24].

The Social Security Administration requires that "[i]n order to get benefits, [a claimant] must follow treatment prescribed by [his] physician if this treatment can restore [his] ability to work." Need to Follow Prescribed Treatment, 20 C.F.R. § 416.930. However, some failures to comply with prescribed treatment may be excused, including physical, mental, educational, and linguistic limitations. *See Thompson*, 987 F.2d at 1490. Although not established by the regulation, the Tenth Circuit has nonetheless extended these acceptable reasons to include inability to pay. *Id.* at 1482. Before an ALJ may rely on the claimant's failure to pursue treatment as support for his determination, he should consider: "(1) whether the treatment at issue would restore claimant's ability to work; (2) whether the treatment was prescribed; (3) whether the treatment was refused; and, if so, (4) whether the refusal was without justifiable excuse." *Id.* (internal quotations omitted). Where an indigent claimant refuses both costly medical care as well as free remedies, the Tenth Circuit does not extend the excuse. *See Qualls*, 206 F.3d at 1373.

19

The ALJ considered "[r]ecords through July of 2012 indicat[ing] that [Plaintiff] was not compliant with her doctor's recommendations that she undergo physical therapy." [#11-2 at 120]. The ALJ gave the treating physician's statement that "she was not in support of the claimant's SSI claim as her condition would improve if she were to follow treatment such as physical therapy." [*Id.* at 123]. In making these observations, the ALJ implicitly considered and concluded that the treatment would restore claimant's ability to work; the treatment was prescribed; and the treatment was refused; indeed, Plaintiff does not dispute as much. [#15 at 23]. Instead, Ms. Thompson now argues that the ALJ erred in not concluding that she was excused from compliance due to her financial constraints.

As an initial matter, the court notes that the observation that Ms. Thompson failed to comply with her physician's recommendation for physical therapy does not appear to be the basis for denial of her SSI claim. Instead, it appears that it is one indicia that the ALJ considered in reaching his overall determination, including a review of her objective medical findings and an assessment of her credibility. [#11-2 at 110-127]. Even if the court considers her failure to comply with physical therapy as a basis for denying her SSI claim, the record does not support the extension of the excuse to cover Plaintiff. Although two references to her inability to afford physical therapy exist in the record, [#11-8 at 382, 430], there is ample evidence that Plaintiff was encouraged not only to attend physical therapy, but engage in free stretching and at-home fitness plans. *See* [#11-8 at 376, 394, 402-03, 425]. There is no evidence in the record, nor does she argue, that Plaintiff attempted to comply with these free remedies. Nor is it clear from the record that Plaintiff's refusal to attempt any physical therapy for her condition was based upon financial constraints. Therefore, the court concludes that Ms. Thompson should not be excused

and it will not disturb the ALJ's conclusion that Plaintiff is not disabled, as any failure to expressly consider Ms. Thompson's financial condition is harmless.

### III.   The ALJ's Assessment of Plaintiff's Subjective Complaints of Pain

Finally, Plaintiff claims the ALJ improperly failed to evaluate Plaintiff's pain and other nonexertional restrictions in determining her RFC.  [#15 at 28].  But it is well-settled that:

> [a] claimant's subjective allegation of pain is not sufficient in itself to establish disability.  Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain.

*Thompson*, 987 F.2d at 1488.  However, "the statute requires only a loose nexus between the proven impairment and the pain alleged.  Accordingly, if an impairment is reasonably expected to produce *some* pain, allegations of *disabling* pain emanating from that impairment are sufficiently consistent to require consideration of all the relevant evidence."  *Luna v. Bowen*, 834 F.2d 161, 164 (10th Cir. 1987) (emphasis in original).  For these reasons, the ALJ must "consider and determine (1) whether [Plaintiff] established a pain-producing impairment by objective medical evidence; (2) if so, whether there was a loose nexus between that impairment and her subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, [Plaintiff's] pain was in fact disabling."  *Franklin v. Astrue*, 450 F. App'x 782, 789 (10th Cir. 2011) (internal quotation omitted).  In applying these steps, the ALJ determined that Plaintiff's pain did not render her disabled.

First, he found that Plaintiff had three objective, pain-producing impairments: lumbar spine disorder, depressive disorder, and an anxiety disorder.  [#11-2 at 115].  The ALJ then considered Plaintiff's testimony that she could not work due to back, neck, and leg pain; takes medications, including three types of pain medications; has difficulty bending, lifting, and

squatting; has difficulty going up and down stairs; can sit for no more than eleven minutes; can lift twenty pounds, but cannot do so repeatedly; suffers from depression and anxiety; and struggles with concentration and working well with others. *See* [*id.* at 116-18]. Despite finding objective medical evidence and a loose nexus between the impairments and her subjective allegations of pain, the ALJ concluded that considering all of the evidence, Plaintiff's pain was not, in fact, disabling.

The ALJ weighed the medical evidence of and treatment received for Plaintiff's back, knee, and leg pain. [*Id.* at 116]. For example, he considered "X-rays of [Plaintiff's] cervical spine [that] showed focal degenerative changes at C4-C-6." [*Id.* at 116 (citing #11-8 at 426)]. He also considered "an EMG study which was negative, indicating that [Plaintiff's] back pain is muscular in nature," and could therefore benefit from strengthening exercises. [*Id.* at 120]. The ALJ also considered the physical examination completed by Dr. Moran, in which there was found "no clubbing, cyanosis, edema, or deformity in any of [Plaintiff's] joints or extremities[,] . . . some decreased sensation to the lateral aspect of the right leg consistent with lumbar radiculopathy[,] . . . [and] normal muscle strength throughout." [*Id.* at 121 (citing #11-7 at 343)].[6] This court finds no error in the manner in which the ALJ weighed these factors and termed them to be "minimal . . . [and] clearly support[ing] that [Plaintiff] is capable of performing work per the restrictions set forth" in the rest of his report. [*Id.*].

As to Plaintiff's mental and emotional complaints, the ALJ also found evidence in the record to support that Plaintiff's subjective complaints of pain were rooted in real impairments. For instance, he cited Plaintiff's reports at a consultative psychological examination that she suffered from "depressed mood, feeling sad, having no energy, and feeling hopeless and

---

[6] Though not addressed by the ALJ, the record includes evidence that Dr. Moran found decreased flexion of both hips, markedly reduced range of motion in both knees, and decreased extension in her lumbar spine. *See* [#11-7 at 344].

worthless, . . . hear[ing] mumbling voices and ha[ving] frightening, disturbing thoughts." [*Id.*].

Nonetheless, the ALJ found that the subjective and objective evidence did not support Plaintiff's

allegations that she was disabled because of her depression and anxiety.  Dr. Graham "diagnosed

[Plaintiff]  with  major  depressive  disorder  [and]  generalized  anxiety,"  but  in  the  same

appointment "assigned [Plaintiff] a Global Assessment of Functioning scale score of 55

indicating no more than 'moderate' limitations."  [*Id.* at 121-122].  Based on these observations,

the ALJ concluded that "the claimant is capable of making a successful adjustment to other work

that  exists  in  significant  numbers  in  the  national  economy.   A  finding  of  'not  disabled'  is

therefore appropriate."  [*Id.* at 126].  Because of these reasons, the court finds the ALJ relied on

substantial evidence in concluding Plaintiff's subjective complaints do not render her disabled.

## CONCLUSION

The  court  is  satisfied  that  the  ALJ  considered  all  relevant  facts  and  that  the  record

contains substantial evidence from which the Commissioner could properly conclude under the

law and regulations that Ms. Thomas was not disabled within the meaning of Title XVI of the

Social Security Act and therefore not eligible to receive Supplemental Security Income benefits.

Accordingly, **IT IS SO ORDERED** that the Commissioner's final decision is **AFFIRMED** and

this civil action is **DISMISSED**, with each party to bear his own fees and costs.  A separate

judgment will enter in favor of Defendant Carolyn W. Colvin, Acting Commissioner of Social

Security.

DATED: July 12, 2016.                    BY THE COURT:

                                         s/Nina Y. Wang
                                         Nina Y. Wang
                                         United States Magistrate Judge